IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 01629 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| MICHELLE A. KING, | ) | |
| Acting Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER[3]

Before the Court is Plaintiff Sandra S.'s motion and brief in support of her motion to reverse and remand the Administrative Law Judge's ("ALJ") decision denying her disability benefits application (D.E. 18: Pl. Opening Soc. Sec. Brief, "Pl. Brief"), and Defendant's motion for summary judgement (D.E. 21) and memorandum in support of her motion for summary judgment (D.E. 22: Def. Mem. in Support of Mot. for Summ. J., "Def. Mem.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Michelle A. King for her predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On March 21, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 9.)

I.   **Procedural History**

Plaintiff applied for disability insurance benefits on June 25, 2020, alleging disability beginning December 31, 2014. (R. 15.) Plaintiff's date last insured was December 31, 2019. (R. 16.) The ALJ held a video hearing on March 16, 2022. On April 11, 2022, the ALJ issued a written decision denying Plaintiff's application, finding her not disabled under the Social Security Act.[4] This appeal followed. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

II.   **The ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims, described below. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 17.) At Step Two, the ALJ determined that Plaintiff suffers from severe impairments of chronic obstructive pulmonary disease and chronic kidney disease, each of which significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. (R. 18.) The ALJ also found that Plaintiff had the medically determinable impairment of hypertension. Plaintiff's hypertension caused no more than minimal functional limitations and therefore was nonsevere. (*Id*.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a statutory Listing. (R. 17.) Before Step Four, the ALJ assessed a residual functional capacity for Plaintiff to perform medium work, except that she "is limited to no climbing of ladders, ropes, or scaffolds," "no exposure to fumes, odors, gases, and poor ventilation," and "occasional hazards." (R. 18.)

At Step Four, the ALJ found that Plaintiff is capable of performing her past relevant work as a nurse's assistant. (R. 22.) Because the ALJ found that Plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity, Plaintiff's inquiry ended and the ALJ determined that Plaintiff was not disabled. (R. 23.)

## III.    Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former

3

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. §

416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the

plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.

1992). A negative answer at any step other than at Step Three precludes a finding of

disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the

plaintiff shows an inability to perform past work, the burden then shifts to the

Commissioner to show the plaintiff's ability to engage in other work that exists in

significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review."

*Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it

is supported by "substantial evidence," which means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*.

As the Seventh Circuit stated, ALJs are "subject to only the most minimal of articulation

requirements" and "need not address every piece or category of evidence identified by

a claimant, fully summarize the record, or cite support for every proposition or chain of

reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to

their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity

of the agency's ultimate findings and afford the appellant meaningful judicial review."
*Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the
shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence
to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that
district courts, on review of ALJ decisions in Social Security appeals, are subject to a
similar minimal articulation requirement: "A district (or magistrate) judge need only
supply the parties . . . with enough information to follow the material reasoning
underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The
district court's review of the ALJ's opinion "will not reweigh the evidence, resolve
debatable evidentiary conflicts, determine credibility, or substitute its judgment for the
ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal
quotations omitted). As long as an ALJ gives specific reasons supported by the record,
the Court "will not overturn a credibility determination unless it is patently wrong."
*Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

## IV.  **Analysis**

Plaintiff objects to the residual functional capacity assessment that she can
perform medium work, which "involves lifting no more than 50 pounds at a time with
frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §
404.1567(c). She asserts that the ALJ did not support her finding with substantial
evidence. (Pl. Brief 5.) Plaintiff's sole argument is that the ALJ did not appropriately

account for an "August 2017 visit for left anterior knee pain during which 'limping' was observed and for which an MRI was ordered and demonstrated 'possible meniscal tear' for which Plaintiff has been prescribed NORCO due to 'severe' left knee pain seemingly ever since." (Pl. Brief 5.)

The medical evidence concerning Plaintiff's left knee injury consists of one treatment summary from a visit at Mt. Sinai Medical Center on August 17, 2017. (R. 387.) Plaintiff's attorney produced the document (part of a 50-page printout of her "MyChart" medical summary) at the hearing after explaining to the ALJ that he had been unable to get Plaintiff's medical records any earlier. (R. 30-31.) The ALJ admitted the treatment summary into evidence and asked Plaintiff's attorney to question her about the relevant portions, since the ALJ had not had time to review them. (R. 40.)

Plaintiff contends that the ALJ should have engaged a medical expert to interpret the significance of these late-submitted medical records. (Pl. Brief 5.) Plaintiff also argues that the record proves Plaintiff is only capable of light work, which involves a less strenuous lifting requirement than the medium level of exertion in the residual functional capacity determination. (*Id*.) As further evidence that the ALJ should have limited Plaintiff to light work, Plaintiff points to a state agency determination from March 11, 2021 that found Plaintiff disabled as of June 25, 2020 and thus granted her supplemental security insurance benefits as of that date.

After considering the briefs and the supporting record, the Court concludes that the ALJ supported her finding with substantial evidence.

## A. Plaintiff Had No Knee-Related Medically Determinable Impairment.

Plaintiff argues that the ALJ erred because "at Step Two . . . [the ALJ] did not conclude Plaintiff's chronic knee pain secondary to possible meniscal tear to be a 'severe' impairment." (Pl. Brief 4.) But as the Commissioner explains (Resp. 6-7), the ALJ had no reason to consider Plaintiff's knee pain because Plaintiff offers no evidence that it was a medically determinable impairment.

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521). Further, it must "be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

"The burden of proof is on the claimant through Step Four," *Young*, 957 F.2d at 389, and thus it was Plaintiff's burden at Step Two to show that her alleged knee impairment is medically determinable. Plaintiff did not meet this burden. In her application for benefits, Plaintiff did not list any knee issue among her medical conditions. (R. 196.) Instead, she listed "COPD, Chronic Kidney Disease, Chronic Pain, [history] of Muscle Spasms, and HTN." *(Id.)* Further, Plaintiff did not list Norco in

response to the application's question: "Are you taking any medications (prescription or non-prescription)?" (R. 198.)

Plaintiff's attorney confirmed this at the hearing as well, stating in response to the ALJ's question that "the severe impairments in this case are chronic kidney disease, stage 3, COPD, and sciatica low back pain, degenerative disc disease." (R. 32.) When discussing additional impairments, he mentioned only hypertensive retinopathy which he "[didn't] know that that's even a severe impairment" and "it was corrected." (*Id*.)

The consultative examination Plaintiff underwent in January 2021 further underscores Plaintiff's lack of a knee impairment. The examination report of Yevgeniy Bukhman, D.O., explained that Plaintiff listed her chief complaint as "breathing difficulties" and almost exclusively records Plaintiff's problems stemming from her COPD. (R. 356.) Plaintiff made no mention of knee pain. (*Id*.) Notably, Dr. Bukhman completed a full musculoskeletal examination and concluded Plaintiff had "free and painless" range of motion in her knees and could perform knee squats. (R. 358.) Moreover, in a functional report Plaintiff completed on September 30, 2020, she did not mention any issues or problems related to her knees. (R. 216-24.)

At the hearing, when Plaintiff's counsel questioned Plaintiff about the medical record of her knee injury, Plaintiff stated that she chose not to get the suggested MRI because "my knee was better... when I went back it was doing better, so I didn't go." (R. 43.) Counsel again asked, "Okay so, that part doesn't bother you anymore?" to which

8

Plaintiff replied "yes." (*Id*.) Counsel then proceeded to ask Plaintiff about her prescription for Norco, and Plaintiff twice indicated that it was only for her back pain. (R. 44.) Plaintiff also testified that she occasionally drives and climbs stairs without any issue. (R. 32-33.)

Plaintiff did not satisfy her burden to prove a medically determinable knee-related impairment. Indeed, Plaintiff never indicated knee issues for purposes of disability evaluation. "Judges are not required to play 'archaeologist with the record.'" *Heather*, 384 F. Supp. 3d at 937; *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999); *see also Sommerfield v. City of Chicago*, 863 F.3d 645 (7th Cir. 2017). The ALJ committed no error.

**B.** **Plaintiff's Later Receipt of Benefits was not Related to Her Knees.**

Plaintiff suggests that the fact that she was found disabled as of June 25, 2020, only six months after her date last insured, suggests that her knee impairment must have been disabling prior to her date last insured. (Pl. Brief 7.) She argues that either the ALJ or an agency doctor erred because they did not review the note about her 2017 knee injury. (Pl. Brief 6.) The Court disagrees.

Plaintiff underwent a consultative examination with Dr. Yevgeniy Bukhman in January 2021. State agency doctor Karen Hoelzer, M.D., then evaluated Plaintiff's supplemental security income (SSI) and disability insurance benefits (DIB) applications

in March 2021.[5] With respect to Plaintiff's claim for disability insurance benefits, Dr. Hoelzer determined in March 2021 that there was insufficient evidence to conclude that Plaintiff had been disabled prior to December 31, 2019, Plaintiff's date last insured. (R. 74.) The SSA upheld this determination on reconsideration and it is that decision Plaintiff appeals here. (R. 95-99.)

At the same time, Dr. Hoelzer granted Plaintiff's application for SSI, determining that Plaintiff was limited to light work (and thus disabled based on Social Security Act regulations) as of June 25, 2020. Importantly, in making both of these determinations, Dr. Hoelzer reviewed the entire medical record other than the August 2017 treatment summary about Plaintiff's knee injury. (R. 54-56.) As explained above, Plaintiff did not meet her burden to show that she had a knee impairment.[6] Therefore, the SSA's determination that Plaintiff became eligible for supplemental security income benefits on June 25, 2020 could not have been related to any problem with Plaintiff's knee.

---

[5] SSI, or Supplemental Security Income, pays monthly benefits to individuals with limited income who are blind, age 65 or older, or have a qualifying disability. Social Security Disability Insurance Benefits, provide benefits to people who have developed a disability and who have paid into the Social Security trust fund through years of work. An individual may only receive DIB if the disability onset date is prior to their date last insured, which is calculated based on their earnings history. https://www.ssa.gov/redbook/eng/overview-disability.htm?tl=0 *visited on* January 29, 2025.

[6] Plaintiff suggests that if Dr. Hoelzer had reviewed the August 2017 treatment note, her determination could have changed as to whether Plaintiff was disabled prior to her date last insured. But even that note cannot overcome the fact that Plaintiff denied – on multiple occasions – having knee pain after August 2017.

Moreover, Dr. Hoelzer later explained that she adjusted Plaintiff's work capacity to light "due to [history] of COPD and obesity with shallow breathing and diminished bibasilar sounds on current exam." (R. 59.) The physician listed impairments of "COPD, chronic kidney disease, chronic pain, muscle spasms, and hypertension." (R. 61.) Plaintiff's knee injury was not the impairment the physician identified as the reason she found Plaintiff disabled as of June 2020. Instead, it was because of a decline in Plaintiff's breathing that the physician found Plaintiff capable only of work at the light level. The Court does not share Plaintiff's view that the lowered work level six months later sheds light on the condition of Plaintiff's knees.

Overall, the ALJ appropriately accounted for the September 2017 record and adequately considered its contents in the residual functional capacity. Plaintiff neither alleged nor had a medically determinable knee-related impairment. The Court finds that the ALJ supported her decision with substantial evidence, and Plaintiff's assignment of error does not warrant remand.

11

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum seeking to reverse and remand the ALJ's decision (D.E. 18) and grants that of Defendant seeking to affirm (D.E. 22).

**SO ORDERED.**

**ENTER:**

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: January 29, 2025**